Entered on Docket March 6, 2019

**Below is a Memorandum Decision of the Court.**



_____
**Brian D. Lynch
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>CATHY LYNN HALES,<br><br>Debtors. | Case No. 18-40351-BDL<br><br>**MEMORANDUM DECISION ON CLAIM NO. 10 AND CREDITOR'S MOTION FOR RELIEF FROM STAY** |

On October 25, 2018, Debtor Cathy Hales filed an objection to Claim No. 10 in her bankruptcy case. *See* ECF No. 43 (the "Claim Objection"). Claim No. 10 is based on a debt held by the Estate of John B. Hales ("Creditor") against Debtor's husband, Kevin Hales ("Mr. Hales") arising from a judgment entered against Mr. Hales in Multnomah County Circuit Court in Oregon (the "Judgment"). Debtor asserts that Claim No. 10 should be disallowed in its entirety because the Judgment is only valid against Mr. Hales individually and therefore is not enforceable against the marital estate or community property.

Also on October 25, 2018, Creditor filed a motion for relief from the automatic stay to enforce the Judgment against Mr. Hales. *See* ECF No. 44 (the "Motion"). If granted relief from the automatic stay, Creditor would seek to satisfy its Judgment by garnishing Mr. Hales's wages. *See id.* at 3-4.

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 1

Creditor opposed Debtor's Claim Objection, and Debtor objected to Creditor's Motion. *See* ECF No. 49; ECF No. 50. Arguments for the Claim Objection and the Motion were heard by this Court on December 13, 2018. At the conclusion of that hearing, the Court identified certain legal issues of interest to the Court and invited the parties to file supplemental briefing.

Consideration of the Claim Objection and the Motion requires a determination of whether Claim No. 10 is solely a claim against non-debtor Mr. Hales individually or a claim against the community property Mr. Hales shares with the Debtor as well. Because determination of the Claim Objection and Motion require the evaluation of a common legal issue, the Court issues one memorandum opinion as to both but will enter separate final orders on the Claim Objection and the Motion.

**I. Factual Background**

A.  <u>History of the Chapter 13 Case.</u>

Debtor and Mr. Hales filed a joint chapter 13 bankruptcy petition on February 1, 2018. In their original schedules, Debtor and Mr. Hales listed Creditor as having a $246,000 unsecured claim arising from the Judgment. *See* ECF No. 1 at 29. The original schedules state that only Mr. Hales incurred the debt, but also check a box to indicate that the claim is for a community debt. *See id.*

On March 13, 2018, Creditor filed a motion to dismiss the case on the basis that Debtor and Mr. Hales were not eligible for a chapter 13 bankruptcy case because the noncontigent, liquidated, unsecured debts on the date of filing surpassed the $394,725 limit imposed by Section 109(e) of the Bankruptcy Code. *See* ECF No. 12. The Chapter 13 Trustee objected to confirmation of the Debtor's and Mr. Hales's chapter 13 plan on the same basis and joined Creditor's motion to dismiss. *See* ECF No. 13 at 2; ECF No. 14. In response, Debtor and Mr. Hales filed a motion to dismiss Mr. Hales from the chapter 13 bankruptcy case. *See* ECF No. 17. That motion states

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 2

> The debtor Cathy Hales desires to continue in bankruptcy and believes her individual debt and community debt to be well within the jurisdictional limits of Chapter 13.
>
> Cathy Hales intends to file an amended Schedule F to clarify which debt is her individual debt and community debt. Already she has identified at least one debt that is marked community debt in error. That debt is to the Estate of John B Hales for $246,000. That debt arises from a judgment against Kevin Hales and does not include Cathy Hales or the community estate. Furthermore, the judgment arose from alleged tort activity by Kevin Hales including breach of fiduciary duty with punitive damages. This amendment alone would put Cathy Hales' unsecured debt within the Chapter 13 limits. However, Cathy Hales and her bankruptcy counsel may find other amendments that need to be made after further investigation.

*Id.* at 1-2. The motion was unopposed, and an order was entered on April 27, 2018 dismissing Mr. Hales. *See* ECF No. 19; ECF No. 22.

After Mr. Hales was dismissed from the case, Debtor filed a motion to amend her chapter 13 plan along with a proposed amended plan. *See* ECF No. 28; ECF No. 29. The motion to amend was unopposed and an order approving the amended plan was entered on July 6, 2018. *See* ECF No. 34; ECF No. 36. The amended plan was confirmed on July 12, 2018. *See* ECF No. 37.

B.   History of Claim No. 10, the Claim Objection, and the Motion.

On April 11, 2018, during the pendency of Debtor's motion to dismiss Mr. Hales, Creditor filed Proof of Claim No. 10 based on the Judgment. The Judgment consists of compensatory and punitive damages arising out of claims for conversion, unjust enrichment, and breach of fiduciary duty by Mr. Hales in relation to the management of his father's estate in Oregon. *See* Proof of Claim No. 10-1. Creditor asserts that the amount of Claim No. 10 is $254,700. Although not in the record, the Court will exercise its prerogative to take judicial notice of the fact that the Haleses have been married at all times relevant to Claim No. 10.[1]

---

[1] The Washington State Archives reflect that a marriage certificate for the Haleses was recorded on June 17, 2003. *See* Hales Kevin Marion - Lux Cathy Lynn, Clark County Auditor, Marriage Records, 1843-Present, Washington State Archives, Digital Archives, https://www.digitalarchives.wa.gov/Record/View/31000F7CAE3F05

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 3

**Below is a Memorandum Decision of the Court.**

In the Motion, Creditor requests relief from the automatic stay to collect on the Judgment through a garnishment of Mr. Hales's wages. *See* ECF No. 44. Creditor acknowledges that those wages are community property, but argues collection against such community property is allowed because the tortious conduct resulted in a benefit to the community. In the alternative, Creditor asserts it should be allowed to collect against Mr. Hales's one-half interest in the community's personal property because Mr. Hales does not have sufficient separate assets to satisfy the Judgment. Creditor cites to Washington state case law to support its arguments in favor of collecting against community property to satisfy the Judgment.

In her objection to the Motion, Debtor points out that Creditor has not specified the legal grounds for seeking relief from stay under Section 362 of the Bankruptcy Code. *See* ECF No. 50.[2] Debtor presumes Creditor seeks relief under Section 362(d)(2), which provides for relief from the automatic stay with respect to an act against property of the estate if (a) the debtor does not have equity in the property, and (b) the property is not necessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2). Debtor argues that Mr. Hales's wages "are nothing but equity" and that "as plainly seen in the [D]ebtor's sworn schedules and confirmed plan, the wages are an integral and necessary part of the funding of the plan of reorganization." ECF No. 50 at 1. According to Debtor, "[w]ithout the wages the plan cannot be adequately funded." *Id.*

In the Claim Objection, Debtor "maintains that the claim is against Mr. Hales only and that it should not be an allowed claim in her individual case." ECF No. 43 at 1. Debtor supports her assertion with the following facts: (1) Claim No. 10 arises from the Judgment

---

E55994B293662CF0CE, accessed Mar. 4, 2019.

[2] Debtor also submitted an earlier objection to the Motion and the accompanying motion to shorten time. *See* ECF No. 46. The contents of that objection primarily focused on why a hearing on shortened time was not appropriate. *See id.*

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 4

against Mr. Hales; (2) neither Debtor nor the marital estate are named in the Judgment; and (3) the Judgment is for alleged fraud or similar tortious conduct that was committed by Mr. Hales alone. *See id.* at 1-2. Debtor requests that Claim No. 10 be disallowed in its entirety because the claim is only valid against Mr. Hales individually, not against the marital estate or community property.

Creditor states in its response that it "agrees with Debtor's Objection insofar as it also concedes that Creditor should be granted relief from stay." ECF No. 49 at 1. However,

> [i]f Creditor's claim is disallowed, and Creditor is still not able to collect on Kevin Hales outside the bankruptcy, Creditor would have no other recourse to collect on the debt. In that scenario, Kevin Hales would, remarkably, have greater protection from his largest creditor than he would if he were in an active bankruptcy.

*Id.* at 1-2.

On December 13, 2018, the Court held a telephonic hearing on the Claim Objection and the Motion. Counsel for Debtor, Creditor, and the Chapter 13 Trustee were present. At the hearing, the Court posed questions to the parties related to whether Oregon or Washington law should be applied for the determination of whether Creditor can recover against community property to satisfy the Judgment. The Court also posed questions as to whether Mr. Hales holds any separate property against which the Judgment could be collected.

Near the end of the hearing, the Court invited the parties to submit optional supplemental briefing. Creditor filed a supplemental brief on January 17, 2019. *See* ECF No. 54. Debtor did not file a supplemental brief.

In the supplemental brief, Creditor argues as follows: (1) because the Judgment was obtained under Oregon law, the assets available for satisfaction of the Judgment should also be determined under Oregon law; (2) under Oregon law, Mr. Hales's wages are subject to collection and community property laws do not apply to the collection analysis; and (3) Mr.

Hales's wages, with respect to the Judgment, should be treated as a separate asset, and therefore the commitment of those wages to funding Debtor's chapter 13 plan should not restrict Creditor's collection of those wages to satisfy the Judgment. *See id.* at 1-2. Creditor relies on *Pacific Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 622 P.2d 850 (1980) to support these arguments. In the alternative, Creditor repeats its prior argument that under Washington law, because Mr. Hales does not have sufficient separate assets to satisfy the Judgment, Claim No. 10 should be enforceable against one-half of the community assets. *See id.* at 3-4. Creditor points out that Debtor's sworn schedules, in particular the lack of filing of an amended Schedule B after Mr. Hales's dismissal, is sufficient evidence to show Mr. Hales does not own separate assets. *See id.*

## II. Analysis

Whether the Haleses' community property is liable for Claim No. 10 depends on whether Washington or Oregon law applies. Applying federal choice of law rules, the Court concludes that Washington has the most significant relationship to the issue of what property is available to satisfy the Judgment, and therefore, that Washington law should apply for such a determination. Under Washington law, Creditor may collect against all of Mr. Hales's separate property as well as all community property to satisfy the Judgment because Mr. Hales's tortious conducted benefitted the marital community. Therefore, the Claim Objection will be denied because Creditor has an unsecured community claim in this bankruptcy case. The Motion will also be denied because the community property shared by Debtor and Mr. Hales, including Mr. Hales's wages, became subject to the protections of the automatic stay when this bankruptcy case was filed and Mr. Hales's wages remain necessary to fund Debtor's chapter 13 plan. Creditor has not established that cause exists to grant relief from the automatic stay under these circumstances.

**Below is a Memorandum Decision of the Court.**

A. <u>Choice of Law.</u>

The Court's first determination is whether Washington or Oregon law is the appropriate law to apply for the issue of what property Creditor can collect against to satisfy the Judgment. Before undergoing a choice of law analysis, the Court must first consider whether an actual conflict exists between Washington law and Oregon law. *See In re Symons Frozen Foods Inc.*, 432 B.R. 290, 296 (Bankr. W.D. Wash. 2010). "Generally, a conflict exists where 'two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result.'" *Id.* (quoting *Estate of Miller v. Thrifty Rent–A–Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009)).

Here, an actual conflict exists between Washington law and Oregon law. Under Washington law, Creditor can collect against all of the community property to satisfy the Judgment if the Court concludes that Mr. Hales's tortious conduct was done for the benefit of the community or in the management of community business. *See Clayton v. Wilson*, 168 Wn.2d 57, 63-64, 227 P.3d 278 (2010); *deElche v. Jacobsen*, 95 Wn.2d 237, 245, 622 P.2d 835 (1980). If the Court concludes that Kevin Hales's tortious conduct was not done for the benefit of the community or in the management of community business, Washington law provides that Mr. Hales's one-half interest in the community property could still be pursued to satisfy the Judgment to the extent Mr. Hales does not have sufficient separate property to satisfy the Judgment. *See deElche*, 95 Wn.2d at 246.

Under Oregon law, however, each spouse's respective earnings are separate property and a spouse is not liable for civil injuries caused by the spouse's counterpart. *See* OR. REV. STAT. §§ 108.050, 108.060 (2017) (addressing liability of spouse's property for other spouse's obligations and noninterest of one spouse in property of the other spouse.). Mr. Hales's wages, which would be his separate property under Oregon law, would be subject to recovery, while Debtor's wages would not. Based on the most recently filed Schedule I, Mr.

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 7

Hales's wages account for approximately sixty-five percent of the combined monthly income for this bankruptcy case. *See* ECF No. 31. Thus, the results of applying Washington law differ from the results of applying Oregon law, and, therefore, an actual conflict exists.

Because an actual conflict exists, the Court must apply choice of law rules to determine which state's substantive law to apply to determine what property is available to satisfy the Judgment. "In a bankruptcy case, the court must apply federal choice of law rules." *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1069 (9th Cir. 2002) (citing *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995)); *see also PNC Bank v. Sterba (In re Sterba)*, 852 F.3d 1175, 1177 (9th Cir. 2017) ("[W]e have held that in bankruptcy, federal choice of law rules control which state's law applies."), *cert. denied sub nom. Sterba v. PNC Bank*, 138 S. Ct. 2672 (2018). "Federal choice-of-law rules are based on the Restatement (Second) of Conflict of Laws." *First Cmty. Bank v. Gaughan (In re Miller)*, 853 F.3d 508, 516 (9th Cir. 2017). Washington state courts also follow the Restatement (Second) of Conflict of Laws for choice of law determinations. *See MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 832 (W.D. Wash. 2014); *Woodward v. Taylor*, 184 Wn.2d 911, 918, 366 P.3d 432 (2016).

Under the Restatement (Second) of Conflict of Laws, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971). Section 6 of the Restatement (Second) of Conflicts of Laws provides a list of factors relevant for choice of law determinations. *See id.* § 6(2). That list includes

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* With respect to torts, Section 145 lists additional contacts to be taken into account when applying the principles of Section 6 to the choice of law determination. Those contacts include

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

Different issues in a case can require different determinations about what jurisdiction's law applies. In this case, the fact that Oregon law determines the existence and elements of a tort does not mean that it applies to the question of what property of the tortfeasor is subject to recovery of the Judgment. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* "The courts have long recognized that they are not bound to decide all issues under the local law of a single state." *Id.* § 145 cmt. d; *see also Potlach No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 813, 459 P.2d 32 (1969) (citing Restatement (Second) of Conflict of Laws § 188 cmt. d (Proposed Official Draft, 1968)). "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement (Second) of Conflict of Laws § 145 cmt. d.

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 9

Case 18-40351-BDL    Doc 55    Filed 03/06/19    Ent. 03/06/19 15:15:07    Pg. 9 of 16

**Below is a Memorandum Decision of the Court.**

Washington courts, applying choice of law principles, have under some circumstances determined that the law of another state should be applied to determine what property may be reached to satisfy a judgment or other obligation, and under other circumstances determined application of Washington law was appropriate for such a determination. *Compare Pac. Gamble Robinson Co.*, 95 Wn.2d 341 (applying Colorado law); *Pac. States Cut Stone Co. v. Goble*, 70 Wn.2d 907, 425 P.3d 631 (1967) (applying Oregon law); *Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 195 Wn. App. 896, 381 P.2d 212 (2016) (applying Hong Kong law), *aff'd*, 189 Wn.2d 474, 404 P.3d 62 (2017) *with Potlach No. 1 Fed. Credit Union*, 76 Wn.2d 806 (applying Washington law); *Colo. Nat'l Bank of Denver v. Merlino*, 35 Wn. App. 610, 668 P.2d 1304 (1983) (same). Each such choice of law determination is fact intensive and unique.

In this case, the Court concludes that Washington has the most significant relationship to the issue of what property is subject to recovery to enforce the Judgment. First, the relevant policies of Washington weigh in favor of applying Washington law. Washington's case law on community property liability expresses policy preferences for what assets of a tortfeasor, the tortfeasor's spouse, and their marital community can be reached to satisfy a judgment under certain circumstances. As the Washington Supreme Court expressed,

> We think that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home.

*Potlach No. 1 Fed. Credit Union*, 76 Wn.2d at 36 (quoting *Emery v. Emery*, 45 Cal.2d 421, 428, 289 P.2d 218 (1955)). Because the community's potential liability arises from the family

relationship and Washington is and at all relevant times was the family's domicile, Washington has a strong policy interest in determining the enforceability of the Judgment consistently with its precedents.

The relevant policies of the other interested state, Oregon, and the states' relative interests in determination of this particular issue also weigh in favor of applying Washington law. Oregon does not have a strong policy interest with respect to the specific issue before the Court. While Oregon likely has a policy interest in its judgments being enforceable in Washington, general enforceability is not an issue in this case. As discussed above, under current Washington case law, even if the Mr. Hales's tort did not benefit the community, the Judgment could be enforced against one-half of the community property to the extent Mr. Hales does not have sufficient separate property to satisfy the Judgment. Further, if the Court finds that Mr. Hales's tortious conduct was done for the benefit of the community or in the management of community business, the Judgment could be enforced against all community property. This is not a situation where application of Washington law would deprive Creditor of a meaningful opportunity to recover on the Judgment. The determination of what property can be reached to satisfy the Judgment implicates greater policy concerns for Washington, with its case law reflecting policy preferences on community property, than Oregon, whose interests primarily extend to the general enforceability of its judgments.

Finally, ease in the determination and application of law to be applied weighs in favor of applying Washington law. Washington is a community property state, and Debtor and Mr. Hales are and have been married for a lengthy time. Their largest asset, their home, is identified as community property on Schedule A/B. *See* ECF No. 1 at 10. The wages that have funded and will fund Debtor's chapter 13 plan are community property. Attempting to apply the laws of a common law state on the enforceability of a judgment against spouses in a bankruptcy case filed in a community property state will quickly become complicated. In

contrast, applying Washington law, as discussed in further detail *infra*, Creditor will have either a full claim, a one-half claim, or no claim in this bankruptcy case. Which claim Creditor has can be determined after a few factual findings. Thus, ease in the determination and application of law weighs in favor of applying Washington law.

In the supplemental brief, Creditor argues that because the Judgment was obtained under Oregon law, the assets available for satisfaction of the Judgment should also be determined under Oregon law. Creditor relies on *Pacific Gamble Robinson Co. v. Lapp* for support. However, the facts of *Pacific Gamble Robinson Co.* are distinguishable, as the Washington Court of Appeals summarized in *Colorado National Bank of Denver v. Merlino*:

> It is true that *Pacific Gamble Robinson Co. v. Lapp* held that a judgment arising from a separate business debt of a husband in Colorado was enforceable against the husband's one-half of community property held in Washington. Unlike the Merlinos, the Lapps were Colorado residents when the obligation was incurred, and the entire transaction from which the judgment arose took place in Colorado and involved a business of the husband which he acquired prior to marriage. The Lapps moved from Colorado to Washington, thereby converting their Colorado separate and marital property into community property in this state. The Lapps then claimed their newly-created community property could not be reached to satisfy a judgment for the husband's separate debts incurred in Colorado. Our Supreme Court held the Colorado judgment could be satisfied from the debtor spouse's one-half of the community property in Washington since that property would have been subject to execution in Colorado and Colorado had the most significant relationship to the transaction.

35 Wn. App. at 620-21. This is not a case like *Pacific Gamble Robinson Co.* where a debtor and spouse moved to a community property state to seek immunity from a judgment. It is more similar to *Merlino*, where the married couple were Washington residents and owned property as community property, but one of the spouses incurred a liability in a common law state. *See id.* at 612-13. And like the Washington Court of Appeals in *Merlino*, this Court concludes that Washington has the most significant relationship to the issue of what law to

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 12

apply to determine whether Creditor can enforce the Judgment against community property. *See id.* at 621.

B.     Application of Washington Law.

Under Washington law, "[t]orts which can properly be said to be done in the management of community business, or for the benefit of the community, will remain community torts with the community and the tortfeasor separately liable." *deElche*, 95 Wn.2d at 245. "For torts not in the management of community business or for its benefit . . . , the separate property of the tortfeasor should be primarily liable. If there is insufficient separate property, however, then the tortfeasor's half interest in community personal property shall first become liable . . . , subject of course to the exemptions in RCW Title 6, Enforcement of Judgments." *Id.* at 246 (footnote omitted).

Here, Multnomah County Circuit Court found that Mr. Hales improperly took at least $179,762 in rental proceeds from his father's estate for personal use. Mr. Hales was found liable for conversion, unjust enrichment, and breach of fiduciary duty. *See* Proof of Claim No. 10-1, Attachment 1. As Professor Cross has noted, such tortious conduct can expose a marital community to community liability: "If the tort, for example, conversion, could confer a direct property benefit on the community, the basic community property presumption would dictate that the asset acquired would be community property, and hence the liability incurred in acquiring (or attempting to acquire) it would be a community liability." Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 138 (1986). When Mr. Hales took the $179,762 in rental proceeds, that property presumptively became community property. Neither party has argued otherwise or offered evidence to rebut that presumption.

Therefore, Mr. Hales's tortious conduct conferred a community benefit and became a community liability. Under Washington law, Creditor would be allowed to collect against Mr.

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 13

Hales's separate property as well as all of the community property Mr. Hales and Debtor share.³

C.      Claim Objection.

Debtor has objected to Claim No. 10 on the basis that "the claim is against Mr. Hales only and that it should not be an allowed claim in her individual case." ECF No. 43 at 1. Section 101 of the Bankruptcy Code defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Section 101 defines "community claim" as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case." *Id.* § 101(7). The definition of the term "creditor" includes entities that have a community claim. *See id.* § 101(10)(C).

Section 541(a)(2) specifies the community property that is included within the bankruptcy estate:

> All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--
>
> (A)      under the sole, equal, or joint management and control of the debtor; or
>
> (B)      liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

*Id.* § 541(a)(2). Under Washington law, with certain enumerated exceptions, "[e]ither spouse or either domestic partner, acting alone, may manage and control community property, with a

---

³ Because the Court has determined that the Judgment is a community liability and Creditor may enforce the Judgment against all community property, the Court does not make any factual findings regarding the sufficiency of Mr. Hales's separate property for satisfaction of the Judgment.

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 14

like power of disposition as the acting spouse or domestic partner has over his or her separate property, . . . ." RCW 26.16.030.

Neither party has disputed that Debtor has joint management and control of the community property she shares with Mr. Hales. As held above, all community property owned by Debtor and Mr. Hales is liable for the Judgment. Therefore, the Judgment is a community claim, and the Claim Objection will be overruled.

D.  Motion for Relief from Stay.

Creditor has requested relief from the automatic stay to seek satisfaction of the Judgment through a garnishment against Mr. Hales's wages. *See* ECF No. 44. However, Mr. Hales's post-petition wages are property of the estate under Section 1306:

> Property of the estate includes, in addition to the property specified in section 541 of this title--
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). "Earnings, including a non-filing spouse's post-petition community property earnings, are also property of a chapter 13 debtor's bankruptcy estate." *In re Cluff*, No. 09-41244-JDP, 2012 WL 909551, at *2 n.16 (Bankr. D. Idaho Mar. 15, 2012) (citing 11 U.S.C. §§ 541(a)(2), 1306(a)(1)). The automatic stay prohibits "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a)(2).

As discussed above, Creditor has a claim in the bankruptcy case against the community property shared by Debtor and Mr. Hales. Debtor's plan is funded with community

**Below is a Memorandum Decision of the Court.**

property wages, including those earned by Mr. Hales. Counsel for Debtor represented in pleadings and at the December 13 hearing that the Mr. Hales's wages are necessary to feasibly fund Debtor's chapter 13 plan.

Creditor has not shown that cause exists to allow Creditor to enforce the Judgment outside of bankruptcy against community earnings and assets, which would compromise the feasibility of Debtor's plan and likely result in a greater recovery for Creditor than for other unsecured creditors. Therefore, the Motion for relief from the automatic stay will be denied.

/// END OF ORDER ///

MEMORANDUM DECISION ON CLAIM NO. 10 AND
CREDITOR'S MOTION FOR RELIEF FROM STAY- 16